UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:07CR148 HEA |
| | ) (FRB) |
| DAVID L. JOHNSON, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

1. Defendant's Motion To Suppress Evidence (Docket No. 20); and
2. Defendant's Motion To Suppress Statement (Docket No. 21).

Testimony and evidence was adduced on the defendant's motions at a hearing on January 18, 2008. From the testimony and evidence adduced at the hearing the undersigned makes the following findings of fact and conclusions of law:

Findings of Fact

On July 8, 2007, shortly after midnight, Trooper Richard Walker, of the Missouri State Highway Patrol, was on patrol driving northbound on Business Highway 67, on the outskirts of Fredericktown in Madison County, Missouri. At that time Trooper Walker observed a white Dodge pickup truck driving southbound on

the highway which had only one illuminated headlight.  As this appeared to be a violation of Missouri traffic laws Trooper Walker turned his vehicle around and began following the pickup truck.

Shortly thereafter the pickup truck turned right onto Madison County Road 275.  Trooper Walker followed and then signaled the pickup truck to stop and pull off the road using the emergency flashing lights on his patrol vehicle.  The pickup truck complied.

Trooper Walker then got out of his patrol car and approached the driver's side of the pickup truck.  As he did so he noticed an "ammunition box" in the bed of the pickup truck. Trooper Walker asked the driver of the pickup truck to produce his driver's license which he did.  The driver was David L. Johnson, the defendant here.  Trooper Walker told Johnson the reason why the trooper had stopped him.  Trooper Walker then asked to see the registration papers and proof of insurance for the pickup truck. Johnson replied that he did not have insurance and that he did not have the registration papers for the vehicle because he only had the vehicle for a couple of weeks.

As Trooper Walker spoke with Johnson it appeared to Trooper Walker that Johnson's eyes were glassy.  Trooper Walker also noticed a beverage container in the console of the truck. Trooper Walker was then concerned that Walker might be driving while impaired.  Trooper Walker then asked Johnson to step out of the pickup truck.  Johnson complied.  As Johnson got out of the

truck Trooper Walker saw what he believed could have been a rifle barrel behind the seat of the truck.

Trooper Walker and Johnson then went to and sat in the police patrol vehicle. Johnson was seated in the front passenger seat and was not handcuffed or restrained physically in any way. Trooper Walker ran a computer check on the defendant and received a caution notice that Johnson might be armed and dangerous. Trooper Walker asked Johnson what was in the ammunition box in the bed of the pickup truck. Johnson replied that it contained a black powder pistol. Johnson then volunteered that he had been in prison "in the 90's for meth and stuff."

Trooper Walker then had Johnson step out of the patrol car and administered a field sobriety test to Johnson, which Johnson passed.

Trooper Walker then told Johnson that the pickup truck could not be driven on the road in the condition that it was in and that Johnson would have to find another way to where he was going. Johnson then returned to the truck and Trooper Walker accompanied him. Johnson opened the driver's side door of the truck and as he did so Trooper Walker positioned himself at the side of the truck so that he could have a view of the area behind the seat of the truck. When he did so he was able to see the butt end of a rifle. Inasmuch as Johnson had told Trooper Walker that he had been in prison for "meth" Trooper Walker had reason to believe that the defendant was a convicted felon and could not lawfully possess a firearm. Trooper Walker then placed the defendant under arrest.

Trooper Walker then advised the defendant of certain constitutional rights by reading them from a card. (See Government's Exhibit 1). Specifically, Trooper Walker told Johnson that he had the right to remain silent; that anything he said could and would be used against him in court; that he had the right to speak to an attorney and to have an attorney present during questioning; that if he could not afford an attorney one would be appointed for him before questioning if he wished; and that he could decide at any time not to answer questions or to make any statements. After being so advised Johnson said that he understood these rights. Johnson then stated that he knew that he wasn't supposed to have a firearm because he was a convicted felon.

Trooper Walker subsequently seized the rifle from the truck and found it to be a Stevens .22 caliber bolt action rifle. The rifle bore no serial number.

Trooper Walker then transported Johnson to the Madison County Sheriff's Office. While en route to the office Johnson told Trooper Walker that he had some marijuana in his pockets. Upon arrival at the Sheriff's Office Trooper Walker searched the person of Johnson and found a quantity of marijuana on his person.

Trooper Walker asked Johnson if he wished to make a written statement about the events that had occurred that evening and Johnson said that he did. Johnson then hand-wrote a written statement. (See Government's Exhibit 2). After booking Johnson was issued summonses for various violations and was released from custody.

Discussion

As grounds to suppress the evidence seized from him the defendant asserts that it was seized "as a result of a search or other illegal intrusion without a warrant, probable cause, or other legal justification in violation of his rights guaranteed by the Fourth Amendment of the Constitution of the United States."

When a police officer observes a vehicle being operated in violation of traffic laws, the officer has probable cause to stop the vehicle, even if the violation is a minor one. Whren v. United States, 517 U.S. 806 (1996); United States v. Brown, 345 U.S. 574, 578 (8th Cir. 2003). In the instant case Trooper Walker saw the vehicle being operated on the highway shortly after midnight with only one illuminated headlight. This is a violation of Missouri law. See R.S.Mo. §§ 307.045 and 307.185.

During a traffic stop the officer may order the driver to step out of the vehicle. Pennsylvania v. Mimms, 434 U.S. 106 (1977). During the stop the officer may ask for the driver's license and vehicle registration papers, and run a record check on the driver. The officer may ask the driver to sit in the police car while this is being done. United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994); United States v. Bueno, 443 F.3d 1017, 1025 (8th Cir. 2006); United States v. Olivera-Mendez, 484 F.3d 505 509 (8th Cir. 2007). As the defendant was speaking with Trooper Walker he volunteered that he had spent time in prison.

Officer Walker had seen what he thought might have been a rifle barrel behind the seat of the truck. After completing the

traffic stop Trooper Walker allowed the defendant to return to the pick-up truck. Trooper Walker positioned himself so that he could see into the passenger compartment of the truck, and particularly the area behind the truck seat, when the defendant opened the door. When the door was opened Trooper Walker from his vantage point was able to see the butt end of a rifle. At that time the butt of the rifle was in plain view of Trooper Walker. The trooper was lawfully in the place from which he was viewing the rifle, and the incriminating character of the rifle was readily apparent to him. The subsequent seizure of the rifle by Trooper Walker was therefore lawful. Horton v. California, 496 U.S. 128 (1990); Texas v. Brown, 460 U.S. 730 (1983); United States v. Beatty, 170 F.3d 811, 814 (8th Cir. 1999); United States v. Bynum, 508 F.3d 1134 (8th Cir. 2007).

Because the defendant had told Trooper Walker that he had been in prison for "meth" Trooper Walker had reason to believe that the defendant was a convicted felon and that, therefore, it was unlawful for the defendant to possess the firearm found in the truck. The arrest of the defendant was lawful even though made without a warrant because made upon probable cause. United States v. Watson, 423 U.S. 411 (1976); Gerstein v. Pugh, 420 U.S. 103 (1975).

As the defendant was being transported to the jail following his arrest he volunteered that he had a quantity of marijuana in his pocket. The subsequent search of the defendant's person upon his arrival at the jail and the seizure of the

marijuana from his person was lawful because made incident to the lawful arrest of the defendant. United States v. Edwards, 415 U.S. 800 (1974); Curd v. City of Judsonia, 141 F.3d 839, 843 (8th Cir. 1998); United States v. Phillips, 607 F.2d 808, 809-810 (8th Cir. 1979).

As grounds to suppress the statements made by him to Trooper Walker and other officers the defendant contends that the statements were the product of a violation of his Fourth Amendment rights; that his statements were "obtained while in custody, not voluntary or obtained without a proper advise of his rights under Miranda v. Arizona."

As discussed above, there was no violation of the defendant's Fourth Amendment rights, and therefore any statements made by the defendant were not the product of any such violation.

The statements made by the defendant to Trooper Walker during the traffic stop and prior to the defendant's arrest are admissible in evidence even in the absence of Miranda warnings. Berkemer v. McCarty, 468 U.S. 420 (1984); United States v. Rodriquez-Arreola, 270 F.3d 611, 617 (8th Cir. 2001).

After placing the defendant under arrest Trooper Walker advised the defendant of his rights as required by Miranda v. Arizona, 384 U.S. 436 (1966). After being so advised the defendant said that he understood the rights and thereafter made statements to Trooper Walker. This demonstrates a knowing, voluntary and intelligent waiver by the defendant of his rights. United States v. Ingram, 839 F.2d 1327, 1329 (8th Cir. 1988).

All of the statements made by the defendant following his arrest were made after he was advised of his rights and acknowledged that he understood his rights and are therefore admissible.

Furthermore several of the statements made by the defendant after his arrest appeared to have been spontaneously volunteered by the defendant and not made in response to questions put to him, including his statement that he knew he was not supposed to have a firearm because he was a convicted felon, as well as his statement made en route to the police station that he had marijuana in his pockets. Such statements are admissible even absent the advise of <u>Miranda</u> warnings. <u>Miranda v. Arizona</u>, 384 U.S. 436, 478 (1966); <u>United States v. Lockett</u>, 393 F.3d 834, 837 (8th Cir. 2005).

There is no evidence that any statements made by the defendant were the result of any threats, promises or coercion by any law enforcement officers. The statements were therefore voluntary. <u>Colorado v. Connelly</u>, 479 U.S. 157.

<u>Conclusion</u>

For all of the foregoing reasons the defendant's Motion To Suppress Evidence and Motion To Suppress Statement should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion To Suppress Evidence (Docket No. 20); and Defendant's Motion To Suppress Statement (Docket No. 21) be denied.

The parties are advised that they have to and including **March 3, 2008,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

*/s/ Frederick R. Buckles*
_____
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of February, 2008.